21-39-37 Huskoll, Incorporated, et al. v. Director, Office of Workers' Compensation Programs, et al. Arguments not to exceed 15 minutes per side. Mr. Poirot for the petitioners. Good morning. Good morning. My name is James Poirot. I am here for the petitioner, Appellant Huskoll. I would like to reserve two minutes for rebuttal. Very well. Thank you. Your Honors, this case is really very straightforward as a federal black lung claim, and the issue is a straightforward one, which I believe the Court has addressed in the past, which in this case is whether the opinion relied upon by the Administrative Law Judge of Dr. Sichter constitutes a well-documented opinion which supports a reasoned opinion and is substantial evidence to support the Judge's decision. It's black letter law. I believe that when an expert witness relies upon an incorrect exposure history to both coal mine dust and cigarette smoking, that it is not a well-documented opinion, and this is the case with Dr. Sichter's opinion. Stated differently, as I like to do it as a Pennsylvania workers' compensation lawyer, I would say that Dr. Sichter's opinion lacks a factual foundation to make it a competent legal opinion that supports the Judge's decision. There is no dispute in the record of this case that Dr. Sichter's understanding of the claimant's work history is incorrect. The Judge found, based upon... Everyone had deficiencies here, and the ALJ looked at it, understood those deficiencies, and made a call. And the question we have to ask on review is, does substantial evidence support this? And that's just, could a reasonable mind or a mere scintilla agree with it? So, I mean, where I struggle is, it seems to me when I read the briefs and understand the law, you're just asking us to re-weigh what the ALJ already did. Not at all, Your Honor. I believe that there are two issues here, two exposures here, and that the doctor was wrong substantially and significantly as to both of them, and that the Judge ignored those and didn't even understand the doctor's error with regard to the smoking history. I'm sorry to interrupt you. The Judge didn't ignore the points you're bringing up. Right? The Judge understood that Sichter had the work history wrong. The Judge, she had the smoking history right in one spot, and then her notation was wrong or something like that. But in any event, the ALJ recognized both of those things. Well, not the smoking history. It is not clear at all what Dr. Sichter understood, and the Judge believes that Dr. Sichter understood that the minor had a 60-pack year smoking history. One does not need to be a handwriting expert to look at Dr. Sichter's report and to see that she personally wrote on the report that the minor had a 40-pack year smoking history, which is two-thirds of the actual date. Yeah, but right above the 21 years, she had the actual dates, 1978 to whatever, and it was 31 years. Your Honor, respectfully, that's not, as I say, one does not have to be a handwriting expert to see that there are two different types of handwriting here, and the correct exposure of smoking history is not Dr. Sichter's handwriting. So we don't know what Dr. Sichter elicited when she examined the minor. We only know what she wrote on her report in her own hand and which report was submitted to the Administrative Law Judge for his consideration. We have to assume, I believe, that Dr. Sichter relied upon the history that she elicited, that she wrote on the report that she submitted. The Administrative Law Judge said that Dr. Sichter found a 60-pack year smoking history. That is simply not consistent with what the doctor submitted. Well, it's ambiguous, isn't it, because the years would be 30. Well, if it's ambiguous, the judge made a specific finding of fact that it's not supported by what Dr. Sichter submitted. Moreover, I point out to you that the BRB said – We don't look – tell me, we don't look through – if the judge made a judgment call, and based on that, that would be substantial evidence, do we look through and second-guess the judgment call? Because as Judge Gilman just pointed out, they could go either way there. And the ALJ made a call. Respectfully, I don't think it can go either way. I think the only evidence of what Dr. Sichter reported is Dr. Sichter's handwriting. And Dr. Sichter's handwriting is not 60-pack years, it's 40-pack years. I don't see how it can be inferred that what somebody else wrote on a report is what Dr. Sichter believes. Dr. Sichter didn't testify, obviously, it's merely her report. The judge is not drawing inferences, he's making assumptions, and the assumption is contrary to what Dr. Sichter herself wrote on her report. It is a significant difference. Where she's wrong, both as to the smoking history and the employment history, it cannot be said that her opinion is well-documented. It cannot be said that an opinion based upon an erroneous factual history, as to both relevant exposures, is a reasoned opinion. And it cannot be an opinion which constitutes substantial evidence to support the administrative law judge's decision. And I'd point out even with regard to the employment history, we're not talking about many years. We're talking about a stipulation and a finding of 10 years, whereas Dr. Sichter said 15 years. That's not the same as a difference between 25 and 30 years. That five-year difference in a case like this is a substantial difference, and it's a difference that changes the burden of proof. For if there was really 15 years of employment history, the claimant would have been entitled to the presumptions under the Act. You said 14 to 15. 14 to 15. Not 15, so okay, you're fudging a little bit, but okay. Either way, it's a significant difference where we're talking about a minimal history and we're also talking about a significant error as to the smoking. Tell me this. Are you familiar with the Sixth Circuit case from 2002 called Wolf Creek Collieries versus Director of the Office of Workers' Comp? I have read it, Your Honor, but I can't. Okay, because there's a case where the doctor put, you know, he said there was legal pneumoconiosis, and he discounted the, he didn't contribute it to smoking, but he wrote in his history five years when the evidence established it was actually 50 years. Now, that's a major difference, right, between five. And so the company was arguing, well, he clearly isn't entitled to substantial evidence and backing because five years is, he obviously didn't think much of smoking. But the ALJ and the board rejected the employer's argument, and this Court affirmed. So, I mean, you know, it's not as if, therefore, if there's any discrepancy of undercounting or overcounting, oh, we've got to reverse. I mean, how do you distinguish that case? Well, I agree that that is, that not every discrepancy requires reversal, but it's not merely a discrepancy in this case as to the employment history. It's a discrepancy as to the smoking history, and it's a significant discrepancy as to both in our judgment. Well, okay, but there was even a bigger discrepancy in this Wolf Creek case. But smoking was not part of the discrepancy in that case. Smoking is a part of the discrepancy in this case. Oh, it was, because I think the argument there was, well, the doctor is not entitled to, you know, credibility because he so underestimated the smoking history by 90%. We think that in a case like this, the opinion has to be based upon an accurate factual foundation. The facts that Dr. Sichter cited and relied upon simply are not the facts that the judge found. And I would add one more point to this, Your Honor. The judge did state that he was aware of the discrepancy in the employment history, but it was not so great as to affect the credibility, in his mind, of Dr. Sichter. Well, let me tell you, I mean, of course, the doctors you rely on are what? Is it HABRE, H-A-B-R-E, and Brody? Well, Dr. Haber, I think is how you pronounce it. Haber. Actually was an examiner for the claimant from one of the minors clinics. That was offered on behalf of the claimant. That report, that examination was obtained on behalf of and by the claimant. Okay, but Dr. Haber said that he had a dual etiology, didn't he? And Dr. Haber also specifically said that there is no diagnosis of legal pneumoconiosis that can be made in this case. But that's inconsistent with him saying dual etiology, isn't it? Well, his ultimate opinion is not inconsistent. His ultimate opinion is what it is. The judge attributed a different opinion to it. Right, but Judge Gilman's point is they all made errors at some point. He's pointing out an error with this one. The judge didn't rely principally on Dr. Haber. The judge relied on... No, I understand, but his question was, I'm sorry to interrupt, is that you are asking us to rely upon that, to reverse, and yet that doctor made an error as well. Well, I'm asking you to look at what Dr. Sichter said principally because I think Dr. Sichter's report lacks a factual foundation that's accurate and can't be well... Well, your other doctors, I mean, the other doctor, this Dr. Brody, also overestimated the coal mine history, didn't he? He said 17 years, more than Dr. Sichter. And the judge didn't rely on Dr. Brody. The judge concluded that Dr. Brody's report wasn't a document or a reason it couldn't be relied upon. Okay, but if we were to go back, if we were to send it back, the ALJ has to rely on one of these, and they've all got problems. Well, the ALJ relied upon only Dr. Sichter primarily, and that's the one that has the problems. But you admit Haber has problems too. Haber has problems too, but only from... Well, what I would say is that Dr. Haber does not have the problems that Dr. Sichter has because Dr. Haber specifically said there is no diagnosis for legal pneumoconiosis. And again, I point out, Dr. Haber is a physician who examined the claimant at one of the miners' clinics, certainly knows through his experience the difference between clinical and legal pneumoconiosis, had a complete history of the miner's employment and smoking, and concluded that there is no legal pneumoconiosis in this case. Well, but wait, did Dr. Haber... If the judge finds otherwise, he's substituting his opinion. I apologize. Dr. Haber, though, relied on the x-rays, didn't he? The chest x-rays. Well... And that's proper when you're... that's fine for clinical pneumoconiosis, but not for legal pneumoconiosis. Judge, Dr. Haber relied upon all of the medical evidence. He summarized all the medical evidence briefly in his report. The x-rays were one piece of the medical evidence that ruled out clinical pneumoconiosis, but it doesn't exclude his separate diagnosis that there is no... his separate opinion that there is no legal pneumoconiosis. If the court has no more questions, I have nothing else to add. Any further questions? All right. Thank you, counsel. You'll have your rebuttal. Thank you. Good morning. Good morning, and may it please the court, my name is Rachel Wolfe, and I represent the respondent, Mrs. Peggy Clemmons, on behalf of and survivor of Mr. James Clemmons. The ALJ properly weighed the medical evidence, and his findings that the minor, Mr. Clemmons, suffered from legal pneumoconiosis are supported by substantial evidence rational and in accordance with applicable law. First, I will discuss the ALJ's findings as to the medical opinion evidence with respect to the opinions of Drs. Sidkers, Haber, and Brody, and then discuss the ALJ's findings as to the treatment records. The ALJ properly found that Dr. Sidker's diagnosis of... What about the two different types of handwriting? In other words, for Sidker, it is clearly, it says 1978 to 2009 in one handwriting, and then it says two PPPD, two packs per day, for 21 years. So clearly her math is bad, and that caused a misreliance, and then she had the years wrong, 14 to 15 years versus 10. I mean, those seem pretty substantial, both cut in the minor's favor. Yes, Your Honor. With regard to the smoking history, the handwritten note is in the same section on Joint Appendix 272. Judge Golden considered five other physicians a record, and they were similar to the 60 pack years that he found. We could question whether Dr. Sidker meant 60 years or 40 years of smoking. However, I think it's important to note that when a doctor obtains a smoking history, the patient has to report that to the physician. But the years are right. The years are right. So it is very possible that it is a clerical error, as the board pointed out, because the minor, in reporting to other physicians... Her calculation is wrong, and both of the errors are by her. Both the packs per day and the years. And those are two critical facts. They are two critical facts, Your Honor. But it does seem Mr. Clemon's history of smoking was somewhat consistent and unchanging to five other physicians, which include the employer's physicians, physicians from his initial claim before the Department of Labor, and his own physician, his treating pulmonary physician. So it does seem that his history to five other physicians was consistent and unchanging. And I believe it would just be a clerical error in that Dr. Sidker made a mistake in her report. And maybe, like you said, she's not good at math. How do we know it's a clerical error? Your Honor, that is for the judge, the trier of the fact, to decide. And, you know, 40 years of smoking history is still significant. I'm sorry to interrupt you. We're looking at the same evidence the ALJ did, right? Yes, Your Honor. Because the ALJ didn't have hearings or anything factual where Dr. Sidker testified. That is correct, Your Honor. Okay. As to the coal mine employment, I would say that the ALJ was persuaded that Dr. Sidker adequately linked the minor COPD to his coal mine employment in accordance with the Federal Register and preamble and the legal definition of legal pneumoconiosis. Despite that Dr. Sidker recorded 14 to 15 years of coal mine employment. Why is the preamble something proper to rely on? That didn't go through notice and comment. This court has determined in A&E Coal Company v. Adams that a judge's reliance on the medical literature and scientific data in the preamble is proper when an ALJ is making credibility determinations. But that was the, right, for Haber and Brody, is that the only reason the ALJ, it seems at least in my reading, and maybe you can tell me otherwise, the only reason he discounted them was because of the conflict with the preamble, which you're right, our court has said, but clearly didn't go through notice and comment, and it seems to shift the burden automatically, right, because at 15 years the burden shifts. But to me it seems like reliance on the preamble shifts the burden a lot earlier. No, Your Honor, I would disagree that reliance on the preamble does not shift the burden to the employer to prove that no part of his coal mine employment led to his COPD. Dr. Haber, another reason that the ALJ properly found that Dr. Haber's opinion was discredited was that Dr. Haber's opinion did not satisfy the Groves test, which was decided by this court. A Groves test said a miner can satisfy his burden that showing his COPD was significantly related or aggravated by his coal dust exposure by showing that the disease was caused in part. Dr. Haber stated that coal dust did not play a substantial role, and he said the main ideology was his smoking habit, but Dr. Haber did note that miner's COPD was caused by two ideologies. He just found that smoking was the main ideology, which does not pass the Groves test by this court. Well, the reg says that it's legal pneumoconiosis if the coal mining played a part, right, in the COPD. Yes, Your Honor. But what about, I'm just curious, is there any instance wherever, I mean, is the company always going to lose if you've got a coal miner who smokes? No, Your Honor. Director versus Grove. Credibility determinations are up to the trier of fact. In Wolf Creek Colliery's versus Director, this court has said that an ALJ can disregard a medical opinion that lacks support and detail. Dr. Haber's report and Dr. Brody's report lack support and detail. They weren't in line with the preamble. They had misconstrued theories about bronchodilation, and even Dr. Brody said obstructive disease is from smoking and coal dust disease is from, restrictive disease is caused by coal dust, and that is in conflict with the definition of legal pneumoconiosis. I want to go back, Judge Thapar, to your point about the coal mine employment history with Dr. Sidker. The ALJ explained how he reached his conclusion and why he reached his conclusion, and thus we feel that the court should find that his duty of explanation is fulfilled. Judge Golden, he addressed the discrepancy in the coal mine employment, and like you said, he had to make a call on the coal mine employment because there were different histories. Well, Judge Boggs disagreed, didn't she? That's why she dissented? Yes, Your Honor, she did disagree. However, in some of the cases that she cited, the discrepancies were much larger than what we're dealing with here. But Judge Boggs said that the explanation wasn't adequate. Isn't that the basis for her dissent? That's why she would remand for further articulation and reason? The explanation by Judge Golden was not exactly wrong-winded, but it was explained how he considered the smoking history, and it was explained how he explained the coal mine dust exposure. And no physician of the record had an exactly accurate history of coal mine employment. Habers was pretty close. Habers was pretty close, Your Honor, but again, Habers' test did not satisfy the Groves' test, and he discredited it. Dr. Habers' opinion was properly discredited as he excluded legal pneumoconiosis on the absence of clinical pneumoconiosis. And as the regulations say, those are two different diagnoses. You cannot diagnose COPD on a chest x-ray or CT scan. And the ALJ found what? That relying on the chest x-rays was improper in terms of evaluating the legal pneumoconiosis? Yes, so evaluating a chest x-ray is not proper in evaluating the presence of legal pneumoconiosis. Without any more questions from the Court, I will rely on our brief. But I would like to point out that Mr. Clemons filed this subsequent claim on March 14, 2014, which was 3,055 days ago. The respondent submits that the ALJ properly found that Mr. Clemons suffered from legal pneumoconiosis, and we ask that the award of benefits be affirmed. Thank you. Further? No. All right, thank you, counsel. Rebuttal? I'll be even briefer. Pardon? I'll be even briefer. Counsel points out that an ALJ can disregard the report of an expert that lacks support and detail. The administrative law judge here, as we've discussed, acknowledged the error in this employment history that Dr. Sichter reported. He did not seem to be aware of and certainly did not acknowledge the error in the smoking history. He did say that the discrepancy in the employment history was not so great as to affect Dr. Haver's credibility or reliability of her opinion. In light of the discrepancy as to both the smoking history and the employment history, I'd suggest that there is no limiting principle to that statement by the ALJ. If he can say, or an ALJ can say, I'm aware of the discrepancy, but it's not so great as to affect the credibility or the reliability of an expert's report, then there's no limit to what error can be rejected or ignored by an ALJ. Here, the error is profound as to both the smoking history and despite the limited number of years as to the employment history, and we believe that that renders the doctor's opinion not a well-documented opinion. Is it in the ALJ's discretion to make that call? Despite the discrepancies in the report, I nevertheless find the report to be credible and reliable. It is a discretionary call. Don't you concede? There is some discretion. Is it the review for an abuse of discretion? You do, and I believe that where there is a lack of a factual foundation  to rely upon that report and that opinion is an abuse of discretion. And as I say, there's no limit. Well, there is if the limit is abuse of discretion, right? All right. Thank you very much. Case will be submitted. It's my understanding that concludes the oral argument docket for this morning.